Our next case for the day, our final case is 2016-1617 In Re CaliBurger The girl on my right wanted you to have it. I'm just joking. Okay, Mr. Waltz, as soon as you're ready. Waltz? How do I say your name? Waltz? Waltz. You're not a Cali lawyer. I'm not compelling you. I may suggest one, though. May it please the court. It is undisputed that Cali can be suggestive of a lifestyle. And that is the case here. When my client filed its application in 2012, it intended to use the Cali term to suggest the lifestyle experience at its restaurants. And its intention was much like similar restaurants that have also adopted the same Cali term as part of their market. The record indicates that there's a restaurant by the name of Cali Burrito, and that Cali Burrito describes its restaurant as being influenced by the Mellow Cali Bar. There's another restaurant in the record by the name of Cali Fire Grill, and that restaurant describes itself as being influenced by car, surf, and skate culture. And it goes on to say that these are the ethos that make the West Coast the best coast. So, similar to these other restaurants, my client adopted the Cali term to, again, suggest the lifestyle experience at its restaurant, not to describe a particular menu item that may be offered at the restaurant. And, in fact, the evidence of record demonstrates that my client does not promote any particular menu item. Instead, it promotes its menu generally, its burgers, its chicken sandwiches, as being made with fresh ingredients, prepared in a very healthy way, which is consistent with its messaging that it is the California lifestyle that is the primary message being conveyed to consumers, not to promote any particular menu item. So the question in this appeal... Just so I understand your arguments, I understand you're saying Cali Burger is suggestive, but what if the name of the mark you were trying to register for restaurant services was California Style Burger? Well, if the main menu item, or what was being promoted as a feature, a substantial aspect of the restaurant, was, in fact, a California Style Burger, then it would be a descriptive term. But so long as that could convey some other type of message, other than just a food item that is available at the restaurant, then the law says that that would not be a descriptive use, and it could function in a suggestive... No, I'm sorry. Go ahead. Your press release, I think it's a press release, Cali Burger Girl Candice Unions, I guess it's an interview, specifically refers to California Style Burgers. She uses the term California Style, and I think that's, quite frankly, where the board made an error by focusing solely on the use of the term California Style and not considering that term in the context in which it's being used. So, for example, in that City Weekend article, Candice Unions had to go on to explain in the second sentence to the reporter what she meant by California Style. And when she went on to give that explanation, she didn't say that it was a burger that consisted of particular ingredients. Instead, she went on to say fresh ingredients, which, again, is consistent with the messaging of a California lifestyle, which is what my client primarily conveys to its customers. Just out of curiosity, what is a California Style Burger? Well, it varies. There is no consistent definition of what is a California Style Burger. There are some that find, in various regions of the country, a burger that contains lettuce, tomato, onions. In some areas of the country, a California Style Burger has mayo. But I think the key ingredient that seems to be— I thought it was anything with Monterey Jack on it. Cheese, yeah, probably. But one of the key ingredients that seems to be the most consistent is the presence of avocado. If there's an avocado, which would make sense. Avocados are grown in California. They're prominent there. And so that would be a signature ingredient that would render a burger a California Style. My client's burgers do not contain an avocado. And so, in fact, what makes the Cali Double Burger its signature— But you're not—I mean, but the law doesn't say that I look at what you're selling and decide whether you're selling a California Style Burger, right? I'd look at what mark you're applying for. So even if you weren't selling a burger with avocado and bean sprouts, which is probably what, in my mind, comes to mind, if that's not what you were selling, that wouldn't be the issue. If you were seeking this mark for a burger, even if the one you were selling turned out to be slightly different— it had lettuce, tomato, and onions, you know what I mean. It's what you're seeking the mark for, right? Correct, right. Because I looked on your client's website, which is referred to in the record. So while I'm looking on a modern-day version, because the record didn't contain screenshots, it just contained the website, which the examiner himself looked to. But you offer Cali Style Fries. That's what you say, California Style Fries. These are French fries with, quote, real American cheese. I'm not sure what the alternative was, but real American cheese and onions. And I thought, what the heck about that? Screams California to me. I mean, you know, I— I think you're exactly right. Because Cali has a suggestive health type of quality to it, right, so to compare— But the PTO didn't even conclude that, right? They didn't conclude that California Style means healthy, organic ingredients or something like that. They didn't go with a characteristic like that. The board you're referring to? Correct. The board found that Cali can be suggestive of a lifestyle, and I guess our position is that the elements of the California lifestyle, which the director didn't object to or take issue with, one aspect is that there is this sort of healthy characteristic, healthy element to California or to the Cali lifestyle when you think about that. And so when you combine that— But they said that's not what it calls to mind. The word Cali Burger, taken together, means California Style Burger. That's what they concluded, and you need me to conclude that's not true, right? That's what you need. You need me to conclude it doesn't call to mind California Style Burger. Correct. Right. And I think that because there isn't an incongruous meaning when you combine Cali, which is a suggestive term of this lifestyle, and then that lifestyle does include a health component, with burger, a descriptive term, which for the most part has a connotation of being unhealthy. Right. It's an oxymoron when you get right down to it. It's an oxymoron. Exactly. And so when you—and the law is pretty clear that when you take— when a combined mark, a unitary mark, creates an incongruous meaning, that's an indication that it is suggestive. It's not a descriptive term. Would your argument be the same if the mark was California Burger? So now you'd be making the same argument that, okay, the word California, it's not just a state or it's a state of mind. Right. And so now it's all about, I don't know, lifestyle. And we're saying California Burger for a restaurant? Right. Yeah. Right. And that restaurant doesn't feature California Style Burger, but in the similar way in which my client is promoting its menu just generally. We just promote burgers and the health aspects of those burgers. I mean, I guess what I'm wondering is why isn't this case more like a sushi place called California Roll, right? I mean, yes, California, that's a state of mind, but now there's something out there in the marketplace that people recognize as a type of sushi roll, and it's a California Roll. Right. I mean, I think everybody in the room agrees that, sorry, you can't get a registration for California Roll for a Japanese restaurant. Right. So the cases that have come out to discuss the descriptiveness of a restaurant name in the context of that name also corresponding with a food item have all held that so long as the name of the restaurant is not also the name of a significant menu item or a key menu item, then that is not necessarily a descriptive use of the term for the restaurant itself. So, for instance, in the Churrasco's case that the director cites in its brief, the reason that the court found that Churrasco's was a generic term in that case was because the applicant had, on its menu, specifically identified the Churrasco steak as a signature or feature item. There was also a recent TTAB decision that was issued in November 21st of this year. It's an unprecedented decision, but it involved the mark, the salad station. And in that case, it was for the name of a restaurant. And in that case, again, the applicant had a salad bar that it was promoting as having over 80 ingredient types. And the examiner also was able to put another record, 13 screenshots of third-party websites that also had a salad bar. So this makes me a little bit nervous because, again, that's where I started with you was asking whether I'm supposed to look at what you're selling or whether I'm supposed to look at what you're seeking the mark for. You're seeking the mark for restaurant services. In Judge Chen's example, everybody knows what a California roll is. And if I was seeking a California roll for a sushi bar, maybe the sushi bar, and quite frankly, I would think most sushi bars, their primary ingredients are, what, tuna or eel or whatever. California roll isn't the signature dish of the house or the primary dish in the house. It's one of many pieces of well-known sushi that would be offered and you would expect it to find in any sushi bar. Yet it seems like you're telling me that shouldn't, under those circumstances, be found to be descriptive? If a California roll is not denoted as the specialty of the house or their leading selling food item, regardless of the fact that they're seeking a mark for restaurant services, not just their particular restaurant service, I should nonetheless find that that's not descriptive? That's absolutely correct. And that's what the law says the outcome should be. And keep in mind that by granting... Where does the law say that? You mean because Cherasco says this is specialty of the house? Well, I think because just because there's a food item doesn't necessarily mean that when people encounter that name as the name of the restaurant, they're immediately going to call to mind that particular food item if it's not the significant feature of that restaurant. And that makes sense because by getting a registration for the restaurant service itself, it doesn't mean you're going to be able to prevent someone from, and let's say take my client's case, for instance, from someone using California-style burger to describe an actual burger. What about using Cali burger to describe an actual burger? Is your client, if he got the registration, going to be able to prevent someone from using Cali burger to describe a burger? Possibly, yes. I think so. I think there's some uniqueness about that where, again, we would not be able to stop someone, though, from selling or saying that they are offering for sale a California-style burger. That's not the intention here either, and that would not be within the scope of my client's rights. Are there any other questions? Otherwise, I know I'm into my rebuttal. We'll save the rest of your time. Mr. Hickman. Good morning. May it please the Court. The only question in this appeal is whether substantial evidence supports the Board's finding that consumers would readily understand that Cali burgers describes a feature of restaurant services. And the evidence easily does in this case. It includes the Cali burger chain's own marketing materials, which, as the Court observed this morning, show that the chain sells California-style burgers. It includes evidence of other restaurants using Cali to mean California in the context of restaurant services. And the evidence also includes numerous recipes and restaurant menus showing that the public is familiar with the concept of a California burger. Much of that evidence went uncontested before the Board and this Court. With the concept, but not with the ingredients. That is true, Your Honor, but the application here is for Cali burger for use with restaurant services. And restaurant services includes the food, but it also includes a broader scope of things like the atmosphere and other sort of associated products. But that's not what you found. The Board didn't make any fact findings that the atmosphere or otherwise was relevant to its decision. The Board expressly limited its decision to Cali style is a particular type of burger that is known to consumers, and thus they can't get a mark on it for restaurant services. What am I missing? I don't think the Board's opinion was quite as limited as Your Honor described. If we look at page six of the Board's opinion, page six of the appendix. Okay. So first of all, the Board did make a finding that Cali burger is descriptive of a genre of food. But then the Board went on and responded to the applicant's argument, to the Cali burger chain's argument, that really what the term suggests is a lifestyle. And the Board said, well, even if it does suggest a particular lifestyle, that the presence of the food... No, let's be clear. This is what it said. Applicant's argument that its use of Cali as merely a reference to a California lifestyle is unavailing. So that's what the Board held. The Board held it's not a reference to a lifestyle. Right? Am I missing something? Well, if we look further down the page, for instance, the Board cites some of its own cases and there are parentheticals where the Board says the fact that a term, and this is the Rice-Mark case, for instance, the Board says the fact that a term may have different meanings in other contexts is not controlling on the question of descriptiveness. In other contexts, right? That's in other contexts. Not that the word may have different meanings in the same context wouldn't matter. And then I'm reading further down the page, going to the start of the next paragraph at the bottom of the page. The Board says the evidence also shows that the applicant's restaurants feature California burgers on their menus. This is all against the backdrop, as the Board acknowledged or found at the beginning of the opinion, which is undisputed, is that the application is for use, this is for a term for use with restaurant services. So the entire analysis is conducted against the backdrop of restaurant services, not just burgers themselves. And so I think in this opinion, the Board recognized that it's not just the food, but it's also the context in which it's being marketed. Really? Where do you see that? Where did the Board recognize that? Because it says it features California burgers at its restaurant? That's somehow now marketing is part of the criteria that's being taken into account. I don't know. I'm really baffled by your argument. I feel like you're a moving target right now. I actually thought your brief was quite good, and you're not actually sticking to it. I'm not sure where you're going. Well, I think in the brief, I think that we argue that A, yes, the Board, certainly the Board's finding that the term would be descriptive with respect to a genre of food is well supported. Can I ask you to explain something to me? In the final office action by the examiner, it cites a piece of prior art that it's relying on. I don't have the examiner thing at my fingertips. Maybe my clerk can forward me the page it's on in the appendix. But at page four of the blue brief, it discusses it. In page four of the blue brief, this is the portion of the examiner's final office action where he's citing the evidence that's at issue. In particular, what I want to direct your attention to is footnote five in the blue brief, which is supposedly a menu for Freddy's Steakburger California style. Now, this comes directly from the examiner's... Oh, she found the site for me. A23. A23 is... Is that the site for the... No? Oh, sorry. Find the site. Find the right site, Claire. So it's in the blue brief, but it's also in the examiner's office action, which is where this blue brief is citing from. So look at the blue brief at page four. Do you have that? I'm sorry. Page four, your honor? Of the blue brief, yeah. Oh, no. A4. This is what I'm looking at. Okay, I'm sorry. I'm looking at A4. My bad. My bad. Board opinion. A4. So on page A4 of the board opinion, at the top it tells me that it's relying on an article about California burgers from Freddy's Restaurant that sells a Freddy's California steakburger. See that, footnote five? I do. Now I'd like you to track footnote five and tell me what the citation is for this supposed piece of evidence. No, the website. Just go ahead and read it out loud. I'm sorry. You want me to read the website itself? Yeah. I want you to tell me what footnote five says is where I can locate this piece of evidence that the board and the examiner both relied on. Where can I locate it? Because it's not in the appendix and it's not in the record either, by the way. But they gave me a very helpful website. What is that very helpful website? I'm wondering if this is a joke. Oh, www.examiner.com? Yeah. Is that a joke? Is it meant to be funny? I don't think so. Really? Because all I could think of when I'm typing in www.examiner.com is please don't have porn pop up on my government computer while I'm typing it in. Because I knew for sure that was not a government website, right? Right. Understood. Nor is it a reference to Freddy's Steakburger California style. This came from all the way back. I'd like you to take this back to the PTO in all seriousness. And I'd like you to tell them it's not funny. It's not funny. This is important. I want to see this piece of evidence that was supposedly relied on by both the examiner and the board. I pulled up every piece of evidence in this case. That piece of evidence was not only not available, but the best I can tell is somebody thought it would be funny to claim that piece of evidence is available for my viewing at www.examiner.com, which may not surprise you to know is not a government website that has the final office action or any other sort of website with Freddy's Steakburger California style information. Where's the final office action in the record? I don't believe we included the final office action in this appendix. It is in the certified list. It says it's attached to the final office action. It implies to me that the website is attached to the final office action. Page 145. It's not. It's at page 145 in the appendix. And so I think what's going on here is that the board typically won't, when it writes an opinion, won't attach all the evidence that the examining attorney cited to that opinion. The board will simply refer back to the evidence that's attached to the final office action and that's sort of the cue. All right. Well, it was just very hard for me because I couldn't find the evidence that it was supposedly referring to and there is no such thing as examiner data. It says it. It's at the top. I know. It says it at the top. But it's a lot more. It's not examiner.com. You've got to know about 50 other characters before you can get to this piece of evidence. I see. Yeah. It'd be like me telling you to find a particular little piece of straw in a haystack. It's the very top in tiny, tiny letters. Yes, but then look at all of the hashes afterwards. You have to know a bunch of other stuff to be able to get to it. I can't get to it. In any event, one of the things apart from that that was troubling me about the PTO's treatment in this case, which by the way, I know in your red brief you say quite clearly they've waived this argument. So you might have seen it coming. And you say they acquiesced in it below, before the board, and you tell me they waived it on appeal here by not raising it in the blue brief and then they didn't respond to it in the gray brief. So you don't have to worry. I get that it's waived. But one of the things that bothers me is how can you say a California burger, a Cali burger, is a California-style burger and that that is descriptive of a particular type of burger and then offer me five different pieces of evidence that describe a California burger as five different things? I mean, just because it would mean, if it would mean something different to every person, if people would say, well, yeah, I think that's something with avocado. And someone else would say, no, I think it's something with lettuce, tomato, and mayonnaise. And someone else would say, no, no, I think it's something with American cheese and grilled onions. Well, then it's not actually descriptive. That's suggestive. I mean, I don't know. I was perusing McCarthy on trademark coming in here. And something like that seems to me to quite, and I realize they didn't make this argument. So don't worry. I'm not deciding the case on the basis of this argument. I'm just a little bit worried about the state of the law if the government is of the view that it doesn't have to be descriptive of anything at all in particular. Because is it descriptive to the American consumer? And theoretically, the description should be the same, right? We should all view it as having similar or the same meaning? I think that's a fair observation in many cases. I think the difference here is that there is a common theme running through all the California burger menus and recipes. And it is something that's fresh and healthy. And it's something that's sort of something more than just a greasy burger. But the board didn't say that, right? The board, I mean, I actually agree with you, right? Descriptions can be an ingredient or it can be a quality or characteristic of. But the board didn't go the way, did they, of that it is a burger made healthy in some fashion. That's what California-style burger implies. That would have given them broader leeway, wouldn't it? I mean, do you think they adopted the word California-style as indicative of a characteristic of burgers? Or as you referred to it earlier, somebody did a genre of burgers or something weird? I don't know. I mean, the board did say genre. And the board said that there may be some variation among the different types of California burgers. But the board said that at the end of the day, and it made a finding that at the end of the day, consumers will recognize that it is a type of food. And the board cited all that evidence for it. But I know it's a type of food. But then they cited seven pieces of evidence, no two of which agree with each other on what type of food it is, other than it's a burger. And that would be like saying any time a word has burger in it, it's going to be descriptive no matter what the word in front of it is. They had the whole ball of wax here is Cali or California. And what does that mean? And the seven different pieces of evidence located on page four of the board opinion, four and spanning over to five, each indicate something different. I mean, one person is claiming it's a turkey burger, yummy blend of avocados and tomatoes. Another person is claiming, not surprisingly, in Allentown, Pennsylvania, and I threatened my clerks that I would start singing a song that uses that word during court here. I'll decline to do so. But I did want to put it out there that it was a possibility. In Allentown, Pennsylvania, it's what? Lettuce, tomato, and mayonnaise. That actually doesn't surprise me. You know, they're probably hard to get. Avocados. But if the board had said a California burger isn't something with avocados, because I think there's some testimony somewhere in this record that says, oh, anything California has got avocados in it. But it just it offered me instead seven different examples, which are seven different examples that share only one theme. They all have a burger in them. I would say that they have a burger in it. Some don't have lettuce. Some don't have lettuce. Like the Morningstar one doesn't have lettuce. You know, like some have avocados, some don't. I think this is where, in trademark cases, some of these determinations really are just very fact specific in why we do have the substantial evidence standard of review in these cases. And yes, in some cases, I would agree that the farther away you get from a single item and the more variety there is, the harder sell it's going to be for a descriptiveness refusal. Isn't that the line? I mean, that's the thing. I'm trying to figure out where the line is between descriptive and suggestive. And that, to me, is where the line is, right? The harder it is to call to mind something specific, the less likely it is to be descriptive of a specific thing. True. But I think, you know, on the trademark continuum, there really are no bright line rules. And it really is so incremental. And it really does turn on the evidence in every specific case. And so I think the best I can say is that the line between suggestive and— I think the best you can say in this case is it wasn't raised and it was, in fact, clearly affirmatively waived. Well, it was absolutely waived, for sure. Okay. I do think there is substantial evidence there. But in any event, it was absolutely waived. But just getting to the—where is the line drawing for descriptiveness and suggestiveness for something like this? I mean, if the mark was just burger, well, you know, people can put a million different things on a burger. But we would all say that's generic. How about a Chen burger? A Chen burger. It would call to mind some sort of Asian topping, I think. I know what a Moore burger calls to mind. A lot of fat. A lot of fat in a Moore burger. It is not a healthy burger. I'm out of time. If I could just finish responding to Josh's question. The word burger is generic, but now, you know, California burger, maybe there's a lot of variation in what constitutes the recipe for a California burger. So maybe we can't really put a finger on it. Maybe that makes it suggestive. I mean, I'd like to hear your thoughts on that. I believe there's—you can put a finger on it here, because what the evidence shows— Let's assume you can't. Let's assume that the only thing you can put your finger on is that there's a beef patty between two buns, and then everything else is a free-for-all. I think that's a harder sell for a descriptiveness refusal. It would depend on the specific evidence and facts of that case. At the end of the day, it all comes down to consumer perception and what do consumers understand. Off the top of my head, I can't think of products where there's so much variety in a type of product and consumers still understand it to be a particular thing. But I think this is one good example of it. There may be others out there. And so I think that's why, at the end of the day, the board is entitled to deference on these determinations. And as long as there is a record that reasonably supports what the board did, then it should be affirmed. Thank you. Thank you very much, Mr. Hickman. And thank you for answering my off-brief questions. Mr. Walls? Thank you. You know, the director made the argument that there is evidence actually to support the board's decision that CALI is a descriptive term. And I think it's to the contrary. I think in this case, what the board did was substitute its opinion for what CALI would be a descriptive term as opposed to relying and grounding that finding on the evidence. I mean, what the board relied on to find that CALI was descriptive were really four pieces of evidence. We have two foreign articles, the seriouseats.com article, the cityweekend.com article, all of which just simply reference California style. They do not go into detail about what a California style burger actually means. The third piece of evidence was the press subpage from my client's website, which, again, simply references California style within some abstract headings, which in the Bayer decision… Because your argument, as I understand it, is CALI burger is not really referencing a California style burger. Even if a California style burger is a specific thing, it's referencing something different. It's trying to convey the primary message about the healthy aspects of those food items, not that it's a burger with a particular… But the board had that concession or whatever you want to call it by your representative, Ms. Nunez, that it was. Well, she said that… They relied on it as evidence. Well, they relied on the reference to California style, and they ignored the sentence that followed it, much like they've ignored the context in other pieces of evidence as well. So, if you look at the franchising.com website as well, my client does not promote in that particular piece of evidence a particular style or a burger. It talks about the preceding that CALI-inspired language as the finest and freshest CALI-inspired burgers and chicken sandwiches. We're not signaling out any particular menu item, which is what is required in order to find that a menu item is substantial, it's significant, and therefore possibly would render the name of a restaurant descriptive. So, again, not looking at the context in which the California style words are being used is what the board relied on, and they should have been looking at the context, which would have completely changed how this evidence would have been viewed. CALI burgers, the chain is expanding throughout the United States now, is that right? They have been expanding, right. They launched their first location in, I believe, 2015. So, I assume if this doesn't work out for you, you could still go under 2F for secondary meaning, like California Pizza Kitchen did. That certainly would be an option. But as you know, I mean, claiming a 2F has a negative impact on the scope of your rights. It's an admission, obviously, that the mark's descriptive. So, conceptually, you start with a weaker mark, whereas in my position is that CALI being combined with burger, CALI is a suggestive term. The combination with burger creates an incongruous meaning. It's an inherently distinctive mark, which means that from a conceptual strength perspective, we have a strong mark. If you were seeking CALI burger for a California style burger, do you think it should be allowed? CALI burger for a California style burger? Yes, you weren't seeking it for restaurant services. Because a lot of your argument hinges on what it means that you're seeking it for restaurant services. If you were seeking it for a type of burger with a slice of avocado and some lettuce and some bean sprouts or something, do you think you should be able to get that? Or do you think that would be descriptive of exactly the type of burger you're seeking to apply? I would say, assuming the record, which doesn't exist here, could actually demonstrate that the relevant consumer viewing CALI would immediately recognize it as the abbreviation for California in connection with the style burger, I would say no. Wait, is your argument that CALI doesn't even stand for California, that people don't see CALI and think of California? Your argument was it's California style lifestyle, so your argument wasn't that it didn't call to mind California. There's plenty of evidence about CALI. Well, there's four pieces of evidence about CALI, but it's all in the context of industries that are irrelevant to the quick service premium. But I didn't understand your argument to be a rejection of the idea that CALI stood for the word California or that people would understand it or think it to mean California. Is that your argument? I just want to make sure I understand your argument. No, so in the abstract, people understand that CALI is the abbreviation for California, absolutely. But the third abbreviation test requires that we consider that abbreviation in the context of how the mark is actually being used. In this case, the government's argument that it's being used in connection with a particular type of hamburger. Okay, thank you. I thank both counsel for their arguments today. The case is taken under submission. I'm now hungry. Thank you very much. All rise. The honorable court is adjourned until tomorrow morning at 10 o'clock a.m.